```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

--------------------------------x
STACY SPELL,                    :
                                :
                    Plaintiff, :
                                :
v.                              :    Civil No. 3:07CV00453(AWT)
                                :
STATE OF CONNECTICUT, OFFICE    :
OF CHIEF STATE'S ATTORNEY,      :
                                :
                    Defendant. :
--------------------------------x
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Stacy Spell ("Spell") brings this action against the State of Connecticut, Office of Chief State's Attorney ("Chief State's Attorney") setting forth claims for racial discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq. ("CFEPA") and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII").  The defendants have moved for summary judgment on both counts.  For the reasons stated below, the motion is being granted.

**I.   FACTUAL BACKGROUND**

In October and November 2004, Spell, who was employed by the New Haven Police Department, applied for the position of Inspector in the Ansonia-Milford Judicial District and the Elder Abuse Unit of the Chief State's Attorney, respectively.  He was not hired for either position.

Spell claims not only that he was qualified for each position but also that he was more qualified than the applicant who was hired for that position.  In general, he alleges that he was "more qualified than any of the Caucasian applicants selected to fill the . . . positions."  (Compl. (Doc. No. 1) at p. 4, 6.) According to Spell, he has in-depth interviewing skills and a working knowledge of Spanish.  While their ranks as detectives are comparable, Spell states that he is more mature and has more education than Edwin Rodriguez ("Rodriguez"), who was the Hispanic applicant hired for the position in the Elder Abuse Unit.  He also contends that he had more experience than Rodriguez.  Spell further contends that while he had served in all areas of criminal investigation with the New Haven Police Department for over 27 years,[1] Rodriguez had only worked for the New Haven Police Department for 13 years at the time he submitted his application.  Although the plaintiff admits that he sought disability retirement from the New Haven Police Department due to work injuries that limited his ability to physically chase and subdue suspects, he asserts that the Inspector positions do not

---

[1]The court assumes that the aforementioned information is included in Spell's application because it views the facts in the light most favorable to the nonmovant.  The defendant does not provide a copy of Spell's application and does not argue that Spell did not provide this particular information in his application.

involve this type of work and such work is not included in the job descriptions for those positions.

The Inspector positions involve assisting state prosecutors in the investigation and preparation of criminal cases. In addition, the position requires considerable knowledge of police investigative procedures, knowledge of and ability to apply relevant laws and regulations, knowledge of the state judicial system and procedures, interpersonal skills, oral and written communication skills, the ability to qualify in the use of firearms, and the ability to analyze and organize presentation of data. The job posting for the position identifies the minimum qualifications as the following:

> seven (7) years as a law enforcement officer, three (3) years of which must have been involved in criminal investigations, and possession of a valid motor vehicle license. Applicants must be in good general health and will be required to take and pass a physical examination prior to appointment as an Inspector. Applicants must be proficient in the use of firearms and may be tested prior to appointment.

(Def.'s L.R. 56(a)(1) Statement of Undisputed Facts (Doc. No. 24-3) ¶ 28.)

Spell contends the only reason he was not hired was because he is African American. To support his contention, he states that an African American fills only one of the eighty-eight Inspector positions. He further claims that he has repeatedly

applied for Inspector positions and the position was offered to a non-African American with comparable or less experience each time. According to Spell, the Chief State's Attorney's failure to hire him has caused him emotional distress and economic injury.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce &

Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that *must* be decided in order to resolve a claim or defense

will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the nonmovant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there

must be evidence on which [a] jury could reasonably find for the [nonmovant]."  Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp., 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact."  Weinstock, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.

**III. DISCUSSION**

**A. Exhaustion of Administrative Remedies**

    **1.  Title VII**

Before a plaintiff may bring a Title VII suit in federal

court, he must satisfy two requirements. He must timely file a charge with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter. Shah v. N.Y. State Dep't of Civ. Serv., 168 F.3d 610, 613 (2d Cir. 1999); see 42 U.S.C. § 2000e-5(e)-(f). The plaintiff has 300 days from the occurrence of the adverse employment action to file a complaint with the EEOC if he has "instituted proceedings with a State or local agency with authority to grant or seek relief from [a discriminatory employment] practice or to institute criminal proceedings with respect thereto."[2] 42 U.S.C. § 2000e-5(e)(1). If the individual has not alleged a claim in the EEOC complaint, "federal courts generally have no jurisdiction to hear [it]." Shah, 168 F.3d at 613.

This court does not have jurisdiction to hear claims arising from applications submitted prior to October and November 2004 because the plaintiff failed to exhaust his administrative remedies with respect to those applications. The plaintiff did not file a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") until February 14, 2005.[3] Acts with

---

[2] If he has not instituted such proceedings, he only has 180 days to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1).

[3] In Connecticut, "[t]he CHRO is a deferral agency under which it has a work-sharing arrangement with the EEOC, whereby it is authorized to accept charges for the EEOC." By taking two charges in cases where both the CHRO and EEOC have jurisdiction,

respect to applications submitted in 2000 or 2001 were more than 300 days old, and claims based on such acts are thus time-barred. Although Spell filed a complaint with the CHRO based on the Chief State's Attorney's failure to hire him in 2004, he did not do so previously. While the prior actions may be permitted "as background evidence in support of a timely claim," they are not actionable as separate claims. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

### 2. CFEPA

Likewise, the plaintiff has failed to exhaust his administrative remedies under CFEPA for any alleged discrimination in connection with a failure to hire him prior to 2004. "Both Title VII and CFEPA require exhaustion of administrative remedies against the parties named in the complaint. To fail to do so is fatal under both statutes." Tyszka v. Edward McMahon Agency, 188 F. Supp. 2d 186, 195 (D. Conn. 2001). Under CFEPA, a claim for failure to hire "must be filed within one hundred and eighty days after the alleged act of

---

the matter is "dual-filed" and both the state and federal rights are thus preserved. Ortiz v. Prudential Ins. Co., 94 F. Supp. 2d. 225, 231 (D. Conn. 2000) (noting that the plaintiff included an EEOC charge form in his CHRO complaint, which is "often the way that EEOC proceedings are instituted ."). Whether the plaintiff included an EEOC charge with his CHRO complaint is unclear from the record, but the court assumes arguendo that the plaintiff did so here.

discrimination." Conn. Gen. Stat. § 46a-82(f); see also State v. Comm'n on Human Rights & Opportunities, 211 Conn. 464, 471-72 (1989). The Connecticut Supreme Court found that the time limit stated in the provision's previous formulation at § 46a-82(e) is "mandatory." Williams v. Comm'n on Human Rights & Opportunities, 257 Conn. 258, 284 (2001).

Here, Spell did not exhaust his administrative remedies for any alleged acts of discrimination committed prior to October 2004. Spell filed a complaint with the CHRO on February 14, 2005, which is well beyond the 180-day time limit for any acts of discrimination that may have occurred in 2000 or 2001. Therefore, to the extent Spell seeks to bring claims for failure to hire prior to 2004 pursuant to CFEPA, those claims are time-barred.

### B. Prima Facie Case

With respect to the remaining allegations in Counts One and Two, Spell has failed to establish a prima facie case of a CFEPA or Title VII violation, respectively. To establish discrimination in violation of Title VII in the absence of direct evidence of discrimination, the plaintiff must establish a prima facie case.[4] Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S.

---

[4] It is not necessary for a plaintiff to prove a prima facie case of discrimination in all cases. Without proving all elements of a prima facie case, a plaintiff could prevail if he

248, 252-53 (1981); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Connecticut courts follow the analytical framework set forth in McDonnell Douglas when evaluating a claim for discrimination based on disparate treatment.  See, e.g., Dep't of Transp. v. Comm'n. on Human Rights & Opportunities, 272 Conn. 457, 464 n.9 (2005); see also Brittell v. Dept. of Corr., 247 Conn. 148, 164 (1998) ("In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60.").  Accordingly, the court analyzes the Title VII and CFEPA claims together.

Under McDonnell Douglas, a plaintiff in a discriminatory hiring case has the burden of establishing a prima facie case by showing: "(1) that plaintiff falls within the protected group, (2) that plaintiff applied for a position for which he was qualified, (3) that plaintiff was subject to an adverse employment decision and (4) that the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination."  Byrnie v. Town of Cromwell, Bd. of

---

is able to provide direct evidence of discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Educ., 243 F.3d 93, 101 (2d Cir. 2001). Although the plaintiff has the burden of proof at this stage, the burden is "minimal." Id.

If the plaintiff meets his burden, then the defendant has the burden to produce a non-discriminatory, legitimate reason for the employment decision "to defeat a rebuttable presumption of discrimination." Id. at 102. It is not necessary for the defendant to convince the court that the proffered reasons actually motivated it. Texas Dep't. of Comty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); see also Meiri v. Dacon, 759 F.2d 989, 996 n.11 (2d Cir. 1985). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). Therefore, the plaintiff must be given the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (quoting Burdine, 450 U.S. at 253). The plaintiff must show not only that the proffered reason was false but also that the real reason was discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

The defendant concedes that the plaintiff in this case can

establish that he is a member of a protected class as an African American and that the employer did not offer him the position on either occasion. It contests the plaintiff's ability to establish the second and fourth elements.

Spell has established the fourth element with respect to both applications for the position of Inspector. "[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis . . . ." Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). Therefore, it seems reasonable, in light of the plaintiff's de minimus burden, that the fourth prong can be established in this case by showing that the position was filled by someone outside the protected class.

With respect to the second element, the plaintiff has not created a genuine issue as to whether he was qualified for the position of Inspector, which lists "good general health" and "proficien[cy] in the use of firearms" as qualifications. (Def.'s L.R. 56(a)(1) Statement of Undisputed Facts ¶ 28.) Spell admits that he has permanent impairments in both knees, both hands, and one foot. While he was employed by the City of New Haven, Spell made a claim for heart and hypertension disease and was still taking medication to control the hypertension as late

as February 2008.  On April 24, 2003, Spell underwent a spinal fusion but continued to suffer from intermittent pain in his right buttock, occasional leg spasms, a burning sensation in his left foot, and had difficulty running and climbing stairs. Spell's surgeon reports that all of Spell's back pain, for which he has had operations, has never been fully resolved and causes burning in both legs and low back pain.  As of May 25, 2004, Spell's treating physician determined that he had a 28% permanent partial disability rating for his lumbar spine.  In 2008, Spell was still suffering from low back pain.  Yale's Occupational Clinic opined in January 9, 2005 that Spell's "ongoing back and knee problems make it difficult for him to chase down and apprehend suspects and may also limit his ability to control his sidearm."  (Def.'s Mot. for Summ. J (Doc. No. 24-7), Ex. N.) Spell now disagrees with the doctor's characterization of his ability to control his sidearm but never questioned the characterization at the time the report was submitted, or at any time prior to his deposition in this case.  He testified at his deposition in 2008 that it was apparent from looking at him that he could control his sidearm.  This self-serving testimony was not supported by any medical or other evidence.  Moreover, he did not dispute the accuracy of the conclusion that it would be difficult for him to chase down and apprehend suspects.  While it

is undisputed that Spell has a good work ethic, he has failed to present evidence demonstrating the existence of a genuine issue concerning the fact that he was not qualified for the Inspector position.  See White v. Conn. Dep't of Children & Families, 544 F. Supp. 2d 112 (D. Conn. 2008).  Therefore, Spell is unable to meet even his de minimus burden of showing that he was qualified for the position.  Assuming arguendo that Spell has established a prima facie case, the Chief State's Attorney has provided legitimate reasons for its hiring decisions.  The defendant has produced evidence that Rodriguez, the Hispanic male who was hired, had additional qualifications and experience that made him a better choice for the Inspector position in the Elder Abuse Unit.  Rodriguez's application demonstrated that he had extensive experience in criminal investigations, familiarity with computer software, fluency in Spanish, and experience with financial crimes.  By contrast, Spell's application did not indicate that he had experience with financial crimes or crimes against the elderly.[5]  As to the basics, in response to a question regarding whether he had listed in his application that he had "considerable knowledge of police investigative procedures" or

---

[5]Spell asserts that he had completed a training seminar for Elder Abuse.  However, he also admits that that information did not come out when he was interviewed for a position in 2000.  He was never interviewed for the position in the Elder Abuse Unit in 2004.

"knowledge of the State Judicial System and procedures," Spell testified in his deposition that he had not. (Def.'s Mot. for Summ. J (Doc. No. 24-6), Ex. H p. 76, lines 12-20.)

Although Spell alleges that he was "more qualified than any of the Caucasian applicants selected to fill the . . . positions," (Compl. p. 4, 6), this allegation is insufficient to support a conclusion that the Chief State's Attorney's enumerated reasons were pretextual in this case. The Chief State's Attorney has provided legitimate reasons for not hiring Spell as an Inspector in the Ansonia-Milford Judicial District. The Chief State's Attorney states that Robert J. Brooks ("Brooks"), who was hired for this position, had additional work experience as one of the defendant's current employees assigned to the Ansonia-Milford Judicial District and as a U.S. Marshal, was familiar with the operations at the Ansonia-Milford Judicial District, and had more education than Spell. In his deposition testimony, Spell admitted that he had failed to include complete details about his experience in his application for the position in the Ansonia-Milford Judicial District. Also, Spell's application did not reflect the fact that he has education beyond high school.

Furthermore, Kevin Lawlor, who reviewed the applications for this position, was familiar with Brooks's work. Employers may base their hiring decisions on some subjective criteria. <u>See</u>

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 104 (2d Cir. 2001).  Title VII only requires that a hiring decision not be based on a discriminatory reason; it "does not require that the candidate whom a court considers most qualified for a particular position be awarded that position."  Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980) ("When a decision to hire . . . one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn.").  Thus, it was not improper for the Chief State's Attorney to base its decision to internally promote Brooks, rather than accept a new hire, on its subjective impressions of his work.

Nor can Spell demonstrate that the proffered reasons were pretextual simply by providing the number and/or names of African Americans who have applied for or who have received Inspector positions.  In demonstrating pretext, an employer's "general policy and practice with respect to minority employment" may be relevant.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973).  "[S]tatistics as to [the employer's] employment policy and practice may be helpful to a determination of whether [its] refusal to [hire] respondent in this case conformed to a general pattern of discrimination" against African Americans.  Id. at 805.  However, the Supreme Court added a caveat regarding general

determinations based on racial composition, "caution[ing] that such general determinations . . . may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to [hire]." Id. at 805 n.19.

Spell has failed, with respect to both positions, to meet his burden to produce evidence that could establish that the Chief State's Attorney's proffered reasons for hiring someone else were a pretext for racial discrimination. Thus, he has also failed to meet that burden under CFEPA. See Talwar v. Connecticut, 539 F. Supp. 2d 604, 612 (D. Conn. 2008). Accordingly, the Chief State's Attorney is entitled to summary judgment on Counts One and Two.

**IV.  CONCLUSION**

For the reasons set forth above, the defendant State of Connecticut, Office of the Chief State's Attorney's Motion for Summary Judgment (Doc. No. 24) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant on all counts and close this case.

It is so ordered.

Dated this 17th day of March 2009 at Hartford, Connecticut.

<div style="text-align:right">

/s/AWT
Alvin W. Thompson
United States District Judge

</div>